# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
    Case No. **3:16 mj 46**
THREE CELLULAR PHONES, CURRENTLY LOCATED )
AT CITY OF DAYTON POLICE DEPARTMENT )
PROPERTY ROOM )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the    Southern    District of    Ohio   , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 924(c)(1)(A) | Possession of a firearm in furtherance of a drug trafficking offense |
| 18 U.S.C. 922(g)(1) | Possession of a firearm by convicted felon |
| 21 U.S.C. 841(a)(1) | Possession with intent to distribute heroin |

The application is based on these facts:

See attached affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Dustin J. Phillips, Task Force Officer, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 2/5/16

*Judge's signature*

City and state: Dayton, Ohio      Michael J. Newman, United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A

The property to be searched is three cellular phones, namely a:

a. LG Touch Screen cellular phone, blue in color, model number LS665;



b. Alcatel onetouch cellular phone, black in color, model number A206G;



1

    c.  Companion cellular phone, blue and black in color, model number SM301,



(hereinafter collectively the "Devices"). The Devices are currently located at the City of Dayton Police Department Property Room, 335 W. Third Street, Dayton, Ohio and located within the Southern District of Ohio.

    This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.    All records on the Devices described in Attachment A that relate to violations of 21 U.S.C. § 841(a)(1) "Possession with intent to distribute heroin," 18 U.S.C. § 924(c)(1) "Possession of a firearm in furtherance of a drug trafficking offense," and 18 U.S.C. § 922(g)(1) "Possession of a firearm after having been previously convicted of a felony offense" and involve Sherrod J. Dyer, including:

    a.  lists of customers and related identifying information;

    b.  types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    c.  any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

    d.  any information recording Sherrod J. Dyer's use of rental cars;

    e.  any information regarding the possession or use of firearms.

2.    Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

IN THE UNITED STATES DISTRICT COURT
FOR SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

IN THE MATTER OF THE SEARCH OF
THREE CELLULAR PHONES,
CURRENTLY LOCATED AT CITY OF
DAYTON POLICE DEPARTMENT
PROPERTY ROOM

Case No. _____

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, Dustin J. Phillips, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—three cellular phones—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

1. I am a Task Force Officer with the Federal Bureau of Investigation (FBI), and have been since June, 2015. Since 2007, Affiant has been employed as a Police Officer with the City of Dayton, Ohio. Since 2013, Affiant has been dedicated to the investigation of narcotics, firearms and gang offenses. Affiant has been involved in firearm and narcotics-related arrests, executed search warrants that resulted in the seizure of narcotics and firearms, participated in undercover narcotics purchases, and supervised the activities of informants who have provided information and assistance resulting in narcotics purchases. As part of my duties, I have interviewed drug trafficking suspects, drug users, and have spoken to other law enforcement

officers about drug trafficking activities. I have searched cellular phones using forensic tools/software to locate evidence (including drug trafficking evidence) during the course of my career.

2. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

3. The property to be searched are three cellular phones, namely a:

   a. LG Touch Screen cellular phone, blue in color, model number LS665;

   b. Alcatel onetouch cellular phone, black in color, model number A206G;

   c. Companion cellular phone, black and blue in color, model number SM301,

(hereinafter collectively the "Devices"). The Devices are also described and depicted in photographs in Attachment A. The Devices are currently located at the City of Dayton Police Department Property Room, 335 W. Third Street, Dayton, Ohio and located within the Southern District of Ohio.

4. The applied-for warrant would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

5. On or about January 12, 2016, Dayton Police Officers attempted to stop a male, later identified as Sherrod J. Dyer ("DYER"), as part of a follow up investigation in front of 535

Cedarhurst Avenue in the City of Dayton, Ohio. DYER was operating a white 2015 Dodge Charger with Pennsylvania license plate "JWW3589" which was backing out of the driveway at 535 Cedarhurst Avenue. As the marked police cruiser pulled onto the street, officers saw the white Charger pull back into the driveway and DYER exited the car. Officer Savage attempted to make contact with DYER, however he immediately began running toward the front door of 535 Cedarhurst Avenue. Officer Savage caught DYER at the front door of the house, however DYER continued to resist and attempted to get inside the house. As he was struggling with officers, a loaded Sig Sauer 9MM, Model P228 pistol, serial number 45A037545, fell from the front of Dyer's person. The Sig Sauer firearm was determined to be stolen. DYER was eventually restrained and handcuffed.

6. During an inventory search of the vehicle DYER was operating, Officer Trupp located a grocery bag inside the car. Inside the grocery bag was a clear sandwich bag containing 1.9 grams of what was later determined via laboratory analysis to be a fentanyl/heroin mixture. There were also several empty clear gelatin capsules which are commonly used to package narcotics for sale and a ceramic plate with what appeared to be heroin residue on it. Affiant located a wallet containing DYER's state of Ohio identification card and $455 U.S. currency.

7. Affiant checked court records from the Montgomery County, Ohio Clerk of Courts and learned DYER has been previously convicted of felony offenses (punishable by greater than one year imprisonment), namely on or about December 6, 2011, in the Montgomery County, Ohio Common Pleas Court, case number 2010 CR 02910/03, of three counts of "Trafficking in Heroin."

3

8. Special Agent ("SA") Christopher Reed of the Bureau of Alcohol, Tobacco, Firearms, and Explosives, who specializes in identifying firearms and their origin/place of manufacture, has advised that Sig Sauer firearms are not manufactured in Ohio, and as such, the Sig Sauer firearm recovered from DYER moved in interstate commerce.

9. From my training and experience, I know that drug traffickers often sell heroin in gel capsules which often contain .10 grams. While the price varies between dealers, a single cap commonly sells for approximately $10, and it is not uncommon for dealers give a discounted price when larger quantities are bought. Traffickers often use rental cars to conduct their business, which can be rented by third parties to help shield the trafficker's identity. Firearms are commonly possessed by traffickers as a means of intimidating customers or other traffickers, and to protect the trafficker from robbery. The sale of heroin is largely a cash business, and traffickers often accumulate sums of cash during their deals. Traffickers typically take a larger amount of powder heroin and use plates, razor blades, and other tools to put the heroin into individual gel capsules for retail sale (sometimes referred to as "capping up"). In recent years, I have observed that traffickers often possess fentanyl (sometimes unknowingly believing it to be heroin) and sell it as heroin. At the retail level, traffickers often use cellular telephones to arrange transactions with their user-customers, often directing the customer to locations where the trafficker can meet them in a car and do a quick hand-to-hand exchange. In addition to using texts to arrange a single sale, it is common for traffickers to send text messages to the users informing them of price or the availability of a new supply of heroin (sometimes in a mass text to several people simultaneously). Traffickers commonly store the names and phone number of

their user-customers, as well as those involved in the drug trafficking with the trafficker (sometimes under alias or code names). Because cellular phones often have digital cameras built-in to the phone, it is common for traffickers to take pictures of themselves, their associates, proceeds, and other evidence of drug trafficking. Cellular phones can also store photographs sent to the phone electronically. It is common for traffickers to possess multiple phones because they may be transitioning from sales on a particular phone to another phone as a law enforcement countermeasure, and because traffickers may use one phone to talk to customers while using other phones to communicate with a supplier or associate. Based on the heroin/fentanyl mixture, the empty gel capsules, the plate with what appeared to be heroin residue, the sum of cash, multiple cellular phones, the firearm, and his flight, I believe DYER was involved the sale of drugs when arrested. Possession with intent to distribute heroin is a violation of 21 U.S.C. § 841(a)(1), possession of a firearm by a convicted felon is a violation of 18 U.S.C. § 922(g)(1), and possession of a firearm in furtherance of a drug trafficking offense is a violation of 18 U.S.C. § 924(c)(1). Affiant wants to search the Devices to look for evidence of DYER's drug trafficking and possession of the firearm in violation of federal law.

10. The Devices are currently in the lawful possession of the Dayton Police Department. They came into the Dayton Police Department's possession after they fell from DYER's person during the course of his arrest. While the Dayton Police Department might already have all necessary authority to examine the Devices, I seek this additional warrant out of an abundance of caution to be certain that an examination of the Devices will comply with the Fourth Amendment and other applicable laws.

11. The Devices are currently in storage at City of Dayton Police Department Property Room, 335 W. Third Street, Dayton, Ohio. In my training and experience, I know that the Devices have been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Devices first came into the possession of the Dayton Police Department.

## TECHNICAL TERMS

12. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also

include global positioning system ("GPS") technology for determining the location of the device.

    b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

13. Based on my training, experience, and visual inspection of the Devices, I know that the Devices have capabilities that allow them to serve as a wireless telephone and digital camera. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

14. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. This information can sometimes be recovered with forensics tools.

15. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct

evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Therefore, contextual information is necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

16. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

17. *Manner of execution.* Because this warrant seeks only permission to examine the Devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

18. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Devices described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

_____
DUSTIN J. PHILLIPS
Task Force Officer
Federal Bureau of Investigation

Subscribed and sworn to before me on February 5, 2016:

_____
HONORABLE MICHAEL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

9